UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Michael Smith

              Plaintiff,

    vs.


RJM Acquisitions, LLC

              Defendant.
_____

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

14-CV-186

        Jason A. Shear, Esq., hereby subscribes and affirms under the penalty of perjury as follows:

    1.  I am the attorney for Michael Smith (hereafter referred to as "Smith" or "Plaintiff)) in this case, and as such, I am fully familiar with the facts and circumstances of this case.

    2.  I submit this Affirmation in Opposition to Defendant's (hereafter referred to as "Defendant" or "RJM") Motion seeking an Order dismissing Plaintiff's claim due to failing to state a cause of action.

### *INTRODUCTION*

    3.  This was an action for damages brought by Plaintiff, Michael Smith for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C § 1692, *et seq.* (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices and New York GBL § 349 which proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

    4.  Defendant's violations included, but were not limited to, violating 15 U.S.C. § 1692e(8) by communicating credit information which is known to be false; failing to communicate the disputed status of a debt when RJM knew that the debt is disputed; and also attempting to collect a time-barred account.

1

## *BACKGROUND*

5.   Debt collectors often try to circumvent the seven-year obsolescence period by lying about the open date or date of last activity so that the account appears to be newer than it actually is or even to bring it within the seven (7) year period so that it will remain on the credit reports.   The illegal practice of lying about the age of the account is called "re-aging".

6.   When a consumer debt is being reported, it is reported with other information such as when the account was opened, when it was closed, the last balance, the highest balance, as well as other status information on the account.   Usually, the seven-year reporting is linked to a certain data field that is being reported that is either the date of last payment or the date last major delinquency was reported.   What some collectors, including the Defendant, have been known to do is change those dates on the credit report to be more recent.   Where a negative report of a charge-off that occurred in 2005 would be removed this year, if a collector were to instead report that the charge off occurred in 2010, the account will continue to be reported as a negative until 2017 -- long past when it should be reported.   This practice violates the Fair Debt Collection Practices Act which provides that reporting credit information which is known or should be known to be incorrect is a deceptive act.

7.   Often, a consumer will see a collection item on their credit report and the collector will report a "date opened" on the report as in the instant case. RJM reported this date when the Defendant opened the file in their office - in other words, when it was first purportedly assigned to them.   By making the "date opened" later than it actually is, the collector is forcing the consumer to call the collector to complain about this incorrect date, thereby giving the collector another chance to pressure the consumer to provide money.

8.   The reason Defendant engages in such behavior is because debt reporting re-aging is the practice of reporting a bad debt account as more recent than it really is. Re-aging causes the FICO score to drop dramatically since the scoring model interprets the re-age as a more recent default.

9.   Defendant understands that one of the most effective ways to collect bogus debts is to engage in false credit reporting against consumers such as Plaintiff.

10. Defendant RJM has taken illegal aggressive actions in a continued effort to collect the alleged debt against Plaintiff.   These actions include the continued reporting of the debt to third parties, including consumer-reporting agencies such as Experian and Trans Union.

11. Plaintiff disputed the account with the Credit Reporting Agencies. As such, the Defendant has failed to maintain Plaintiff's account with accuracy and Defendant has failed to properly investigate the account in response to the disputes made by Plaintiff.

### *FACTUAL HISTORY*

12. Defendant did not report the debt as disputed and listed a false "opened date" on Plaintiff's credit report because it benefited them to have their negative entry hanging around on Plaintiff's credit file for as long as possible. Because of this, some collection agencies will go so far as to "re-age" their accounts – intentionally reporting incorrect dates to the credit bureaus to ensure that collections remain on consumers' credit report for much longer than the law allows. Thus, Defendant only reported the date that the account was opened with their facility – not the date of first delinquency. With few exceptions, the "charge-off" date listed on your credit report is the date of first delinquency.

13. The primary reason why Defendant has placed and kept this false information on Plaintiff's report is because it provides enormous financial rewards to Defendant to force consumers to settle disputed or time barred debts because a consumer needs his or her credit report to be correct.

14. The importance of keeping false information on credit reports is because the Defendant understands that one of the most powerful methods furnishers have to wrench payment from a consumer is by placing and keeping false accounts on the consumer's credit reports.

15. RJM violated federal law because Defendant RJM has a no policy or procedures to properly update credit reports of consumers, like Plaintiff, who do not owe the alleged debt.

16. The reason is to keep false information on the credit report to force Plaintiff to pay a debt that is not owed.

17. Defendant RJM has promised through its subscriber agreements or contracts to accurately update accounts but Defendant RJM has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow this requirement as well as the requirements set forth under the FCRA, FDCPA and state law, which has resulted in the intended consequences of this information remaining on Plaintiff's credit reports.

### ***DEFENDANT'S MOTION SHOULD BE DENIED***

18. Defendant's motion should be denied. RJM has violated Federal law because Defendant has assumed a duty, through the subscriber agreement and other actions, to accurately report the balances, and this duty was breached in a negligent, wanton, reckless, willful, intentional, and malicious manner.

19. RJM has a policy to "park" its accounts on credit reports. This is a term in the industry for keeping a false account on the credit report so that the consumer will be forced to pay money in order to obtain a refinancing or to qualify for a loan or to increase the consumer's credit score from the artificially lowered score which directly resulted from the Defendant's intentional and malicious conduct.

20. In parking or allowing the parking of an account, Defendant RJM knows they are violating their obligations and duties under federal and state law to accurately report the account.

21. Defendant knows that parking a false account will lead to false and defamatory information being published every time the Plaintiff's credit report is accessed (as happened to Mr. Smith) and this is the malicious and intentional design behind Defendant's actions with the goal to force the Plaintiff to pay on an account Plaintiff does not owe.

22. Defendant maliciously, willfully, intentionally, recklessly, and/or negligently failed to review the information provided in the dispute that was already in Defendant's files and RJM failed to conduct a reasonable investigation into Plaintiff's disputes, which led as a direct result and consequence to Defendant either failing to delete information found to be inaccurate; failing to replace the inaccurate information with accurate information; and/or reinserting the information without following the dictates of the Fair Credit Reporting Act (FCRA) and FDCPA.

23. In 2013, Mr. Smith contacted the Credit Reporting Agencies (CRAs) to dispute the debt.

24. Once the CRA receives notice of a dispute, the CRA contacts the furnisher (in this case RJM). 15 U.S.C. § 1692e(8) requires a debt collector who knows or should know that a given debt is disputed to disclose its disputed status to persons inquiring about a consumer's credit history.

25. Section 1692e(8)'s requirements that a debt collector, when communicating credit information to a third party (here, a credit reporting agency), must communicate that a debt is

disputed when the debt is known or should be known to be disputed applies when the disputed nature of the debt is conveyed orally and is not limited to written disputes. See, Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998).

### *RJM ENGAGES IN THIS ILLEGAL BEHAVIOR ON A REGULAR BASIS*

26. Defendant has engaged in this dubious behavior numerous times before. In Farren v. RJM Acquisition, LLC, 2005 WL 1799413 (E.D. Pa July 26, 2005) the Court denied RJM's summary judgment on its defense that it informed the credit bureau that a disputed debt was disputed and thus met its obligation under § 1692e(8) when it communicated the disputed status seven (7) months after it communicated the substantive credit information: the court held: "Although the statute does not expressly require a reasonably timed notification [of the disputed status], the Court finds that it is reasonable to interpret the statute as impliedly requiring the communication to be made in a reasonable time."

27. RJM falsely states the status of consumers' debts on a regular basis. The Seventh Circuit in Ross v. RJM Acquisition Funding, LLC, 480 F.3d 493, 495 (7th Cir. 2007), found that RJM violated 15 U.S.C. § 1692e(2)(A) by seeking payment on a debt discharged in bankruptcy.

### *LEGAL ARGUMENT*

28. The plain language of § 1692e(8) requires debt collectors to communicate the disputed status of a debt if the debt collector "knows or should know" that the debt is disputed. See 15 U.S.C. § 1692e(8).

29. This "knows or should know" standard requires no notification by the consumer, written or oral, and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is acquired.

30. Attempts to collect time-barred accounts violated the FDCPA. See, Martinez v. Albuquerque Collections Servs., 867 F. Supp. 1495 (D.N.M. 1994). Collector's knowing attempts to collect time-barred debts violated the FDCPA. See, Stepney v. Outsourcing Solutions, Inc., 1997 WL 722972 (N.D. Ill. Nov. 13, 1997).

31. A Court in the Western District of NY has ruled that allegations that a debt collector's continued attempts to collect a debt it knew was disputed and failure to communicate to a credit reporting agency that a known disputed, state a claim for relief under the FDCPA for

misrepresenting the amount and legal status of the debt and for attempting to collect amounts unauthorized by contract or law. Debt collector's misconduct also states a claim for relief under state tort of negligence for its failure to perform its collection contract with the creditor with due care. See, <u>Finnegan v. Univ. of Rochester Med. Ctr</u>., 21 F Supp. 2d 223 (W.D.N.Y 1998).

### *CONCLUSION*

32.   In conclusion, Defendant does not deny Plaintiff's claim or the facts Plaintiff puts forth. Defendant's counsel simply made a motion to dismiss annexing one (1) unrelated case which has to do with the summary judgment standard. Based on the aforementioned, it is undisputed that Defendant violated the FDCPA and New York GBL § 349 and as such Defendant's motion should be denied.

**WHEREFORE**, Plaintiff, Michael Smith, respectfully requests that Defendant's Motion be denied.

Dated: May 19, 2014
         Buffalo, New York


                                                  /s/: Jason A. Shear
                                                  Law Offices of Jason A. Shear
                                                  Jason A. Shear, Esq.
                                                  E-mail: jshear@jasonshearlaw.com
                                                  *Attorneys for Plaintiff*
                                                  561 Ridge Road
                                                  Lackawanna, New York 14218
                                                  Phone: (716) 566-8988
                                                  Fax: (716) 822-0009

TO:   Peter T. Shapiro, Esq.
      Lewis, Brisbois, Bisgaard & Smith, LLP
      *Attorneys for Defendant*
      77 Water Street, Suite 2100
      New York, NY 10005
      Phone: (212) 232-1300

## **CERTIFICATE OF SERVICE**

Jason A. Shear, an attorney duly admitted to practice before this Court, certifies that on May 19, 2014, he caused Plaintiff's Opposition to Defendant's Motion to Dismiss to be filed via ECF and served by first class upon the attorney of record for Defendant.

/s/: Jason A. Shear_____
Jason A. Shear